FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★     SEP 6  2005     ★
P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CURIZE OLANDA MARIA RICHARDS

         Plaintiff,    04 CV 2025 (SJ)

  - against -        MEMORANDUM
              and ORDER
HOME DEPOT, INC.,

         Defendant.
----------------------------------------------------------------X
A P P E A R A N C E S:

PALMERI & GAVEN
55 John Street
New York, NY 10038
By: John James Palmeri
Attorney for Plaintiff

SIMMONS, JANNACE & STAGG, LLP
75 Jackson Avenue
Syosset, NY 11791
By: Daniel P. Gregory
Attorney for Defendant


JOHNSON, SENIOR District Judge:

  Plaintiff Curize Olanda Maria Richards ("Plaintiff"), an eighteen-year old high school student at the time of the events alleged herein, commenced this product liability action against Home Depot, Inc. ("Defendant"), claiming negligence, breach of warranty and strict liability.[1] Plaintiff alleges that she developed chronic myeloid leukemia, herpes

---

[1] Plaintiff also named Parks Corp., the manufacturer of the product at issue, as a defendant in this action. However, Parks Corp. is no longer a party to this litigation due to its bankruptcy. (Palmeri Aff. ¶ 3.)

1

zoster, and diabetes mellitus as a result of her ingestion and inhalation of PRO Finisher Oil Modified Polyurethane Semi-Gloss ("Pro Finisher"), a wood finisher, sold by Defendant at one of its retail locations. Currently before the Court is Defendant's Motion for Summary Judgment ("Motion") on the grounds that Plaintiff's state claims are preempted and that the Pro Finisher's label complies with the Federal Hazardous Substances Act ("FHSA"), 15 U.S.C. §§ 1261-1278, and other regulations promulgated thereunder. For the reasons set forth below, Defendant's Motion is GRANTED.

### FACTUAL AND PROCEDURAL BACKGROUND

The undisputed facts, viewed in the light most favorable to Plaintiff, follow. In November 2000, at the direction of a contractor who was renovating Plaintiff's bedroom, Plaintiff's father ("Mr. Richards") purchased a container of Pro Finisher from Defendant's store in Elmont, New York. (Palmieri Aff. ¶ 10.) A salesperson informed Mr. Richards of the Pro Finisher's location within the store but made no statements regarding its use. (Id.) Mr. Richards did not ask the salesperson for any instructions. (Id.)

The following warning appeared on the front of the Pro Finisher container: "**DANGER!** FLAMMABLE LIQUID AND VAPOR. HARMFUL OR FATAL IF SWALLOWED. See other cautions on back panel." (Palmieri Aff. Ex. A.) On the back of the Pro Finisher container were the following precautions:

> **Hazards: DANGER! VAPOR HARMFUL.** May affect the brain or nervous system causing dizziness, headache or nausea. Causes eye, skin, nose and throat irritation. **WARNING:** Use of this product will expose you to benzene which is known to cause cancer .

2

P-049

> ... **Precautions:** Keep away from heat, sparks and flame.
> VAPORS MAY CAUSE FLASH FIRE . . . . Prevent build-up of
> vapors by opening all windows and doors to achieve cross-
> ventilation. **USE ONLY IN WELL VENTILATED AREA.** Do
> not breathe vapors or spray mist. Ensure fresh air entry during
> application and drying. If you experience eye watering, headache or
> dizziness or if there is a weak solvent smell, STOP. Leave the area
> and increase ventilation before continuing to avoid health and
> flammability risks . . . .

(Id.) The abbreviated Material Safety Data Sheet ("MSDS"), located on the back of the Pro Finisher container, provides the following additional precautionary information in Section V- Health Hazard Data: "**Effects of Overexposure:** Vapors are irritating to eyes, nose and respiratory tract. Overexposure may result in headache, nausea, vomitting, dizziness, drying of skin. **Emergency and First Aid Procedures:** . . . . INHALATION: Remove patient to fresh air. Provide oxygen. Get medical attention promptly." (Def.'s Notice of Mot. for Summ. J. Ex. D.) At the time of its purchase, the Pro Finisher did not come with any additional warnings, documents, flyers or tags. (Palmieri Aff. ¶ 10.)

Subsequent to purchasing the Pro Finisher, Mr. Richards gave it to the contractor, who applied the substance to Plaintiff's bedroom floor without opening any of the windows.[2] (Id. ¶¶ 11, 12.) After a few days, Plaintiff resumed occupancy of her bedroom while the door and windows remained closed due to cold weather. (Id. ¶ 13.) Several weeks later, Plaintiff began to feel dizzy and weak, and rashes appeared between her legs.

---

[2] It is unclear from the record whether the contractor read the warnings listed on the container. (Palmieri Aff. ¶ 11.)

(Id. ¶ 14.) On May 15, 2001, Plaintiff was diagnosed with chronic myeloid leukemia, herpes zoster and diabetes mellitus. (Id. ¶ 15.)

In her Complaint, Plaintiff alleges that she inhaled and ingested fumes and vapors from the Pro Finisher which have caused her leukemia. (Compl. ¶¶ 14, 15.) Plaintiff contends that Defendant was negligent in its sale and distribution of the product and in its failure to give proper warnings regarding the hazards posed by Pro Finisher. Plaintiff further claims that Defendant breached its implied warranty for fitness and use by placing the Pro Finisher on the market even though it was not reasonably fit to be used for its ordinary purposes. (Id. ¶¶ 17, 19.) Finally, Plaintiff asserts a cause of action for strict liability for Defendant's sale of an allegedly defective product. (Id. ¶ 21.)

On December 30, 2005, Defendant moved for summary judgment, arguing that the Pro Finisher label complies with the FHSA and that Plaintiff's state claims are preempted under federal law. Plaintiff has argued in response that the label in question did not comply with the FHSA in that it failed to adequately warn of the hazard of vapor inhalation and that her claims are not preempted.

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Fed. R. Civ. P. 56; Celotex v. Catrett, 477 U.S. 317, 322

P-049

(1986). The court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Eastman Mach. Co. v. United States, 841 F.2d 469, 473 (2d Cir. 1995). Once the movant has made a showing that there is no genuine issue of material fact to be tried, the burden shifts to the nonmoving party to raise triable issues of fact. See Anderson, 477 U.S. at 250. The nonmoving party must present "significant probative supporting evidence that a material factual dispute exists. Anderson, 477 U.S. at 249.

A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the nonmoving party. Id. In conducting its analysis, the court must draw all reasonable inferences and resolve all ambiguities in the nonmoving party's favor, and construe the facts in the light most favorable to the nonmoving party. Id. at 254-55; Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995). "If reasonable minds could differ as the import of the evidence," then summary judgment is inappropriate. Anderson, 477 U.S. at 250. However, where the nonmoving party's evidence is merely colorable, conclusory, speculative, or not significantly probative, summary judgment is proper. See Parker v. Chrysler Corp., F.Supp. 162, 165 (S.D.N.Y. 1996); Knight v. United States Fire Ins., 804 F.2d 9, 12 (2d Cir. 1986).

## DISCUSSION

I. **Preemption under the Federal Hazardous Substances Act ("FHSA")**

In 1960, Congress enacted the FHSA in order to "provide nationally uniform

5

requirements for adequate cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are intended or suitable for household use." Milanese v. Rust-Oleum Corp., 244 F.3d 104, 109 (2d Cir. 2001), citing House Comm. on Interstate and Foreign Commerce, Federal Hazardous Substances Labeling Act, H.R.Rep. No. 1861, 86th Cong., 2d Sess. 2 (1960), reprinted in 1960 U.S.C.C.A.N. 2833, 2833. The FHSA defines, in part, a "hazardous substance" as "[a]ny substance or mixture of substances which ... is flammable or combustible ... if such substances or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use ..." 15 U.S.C.A § 1261(f)(1)(A).[3]

In 1966, the Act was amended to include the following preemption provision:

> [I]f a hazardous substance or its packaging is subject to a cautionary labeling requirement under [15 U.S.C. §§ 1261(p) or 1262(b)] designed to protect against a risk of illness or injury associated with the substance, no State ... may establish or continue in affect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same risk of illness or injury unless such cautionary labeling requirement is identical to the labeling requirement under [15 U.S.C. §§ 1261(p) or 1262(b)].

(Act of Nov. 3, 1966, Pub.L. 89-756, § 4(a), 80 Stat. 1305, renumbered and amended, Act of Nov. 6, 1969, Pub.L. 94-284, § 17(a), 90 State, 510, reprinted at 15 U.S.C. § 1261 Note (b)(1)(A) "Effect upon Federal and State Law"). Defendant argues that this provision

---

[3] The parties correctly agree that the Pro Finisher at issue falls within the scope of the FHSA and is subject to its labeling requirements.

6

preempts all of Plaintiff's asserted claims. (Def.'s Mem. in Supp. Summ. J. at 5.)

The Second Circuit Court of Appeals held that the FHSA preempts any state causes of action seeking to impose a different or more elaborate labeling requirement than that found in the FHSA and regulations promulgated thereunder. Milanese v. Rust-Oleum Corp., 244 F.3d 104, 109 (2d Cir. 2001). Thus, to the extent that Plaintiff's claims seek to impose additional or more elaborate labeling requirements on the Pro Finisher than those required by the FHSA, they are preempted and therefore dismissed as a matter of law. See Milanese, 244 F.3d at 109.

A. *Non-Compliance with the FHSA*

The Second Circuit Court of Appeals has also determined that the FHSA does *not* preempt state causes of actions alleging *non-compliance* with the Act. Id. at 109 ("Although there is no federal private right of action under the FHSA, a state negligence claim lies for failure to comply with the federal, FHSA-mandated labeling requirements.") (internal citations omitted). In the case at bar, Plaintiff argues that the Pro Finsher's label did not comply with the FHSA because it failed to identify vapor inhalation as a "principal hazard" on the front of the Pro Finisher container. Specifically, Plaintiff contends that the Pro Finsher's label was misbranded in that, "[n]otwithstanding that the[] words [VAPOR HARMFUL] may be on the back of the panel, the failure to set them forth [in the principal display panel] is a material breach of the FHSA . . ." (Palmieri Aff. ¶ 21.) Plaintiff further argues that "reading [] the principal display panel would lead one to believe that the vapor

7

is harmful only because it is flammable, and that the only other danger to potential users would arise from swallowing the contents" (Pl.'s Mem. in Opp'n at 8) and that, "the principal display panel was deceptive in that it did not warn about the dangerousness of the vapors that emanate from the product." (Id. at 10.)

Accordingly, the Court must now inquire as to whether the Pro Finisher's labeling complied with the FHSA and its regulations. Whether or not a label complies with the requirements of a statutory act is a question of law, and summary judgment is appropriate when no factual issues pertaining to the legal analysis are seriously disputed. Pa. Gen. Ins. Co. v. Landis, 96 F.Supp.2d 408, 412 (D. N.J. 2000), aff'd 248 F.3d 1131 (3d Cir. 2000). In its analysis, the Court is confined to the plain text of the statute and its promulgated regulations. See id. at 417.

1. Misbranding under the FHSA

Plaintiff's misbranding argument is based on Section 1261(p) of the FHSA, which requires, in relevant part, that the label of a hazardous substance

> (1) [ ] states conspicuously . . . (C) the signal word "DANGER" on substances which are extremely flammable, corrosive, or highly toxic . . . . (E) an affirmative statement of the principal hazard or hazards, such as "Flammable," "Combustible," "Vapor Harmful," . . . . or similar wording descriptive of the hazard; (F) precautionary measures describing the action to be followed or avoided . . . (G) instruction, when necessary or appropriate, for first-aid treatment, and (2) on which any statement required under subparagraph (1) of this paragraph are located prominently and are in the English language in conspicuous and legible type in contrast by typography, layout, or color with the other printed matter on the label.

8

15 U.S.C. § 1261(p). Under this provision, a "misbranded hazardous substance" is one whose label fails to set forth the requisite criteria stated above. (See id.) Plaintiff claims that the Pro Finisher label did not comply with the FHSA because the warning against vapor inhalation appeared on the back of the product's container but not on its front. (See Pl.'s Mem. in Opp'n at 2-3.) In support of this argument, Plaintiff relies on Milanese v. Rust-Oleum Corp., 244 F.3d 104 (2d Cir. 2001). (Id. at 9 ("[Milanese"] is essentially on all fours with the case at bar.").)

However, the Court finds that Milanese is inapposite to the instant case. First, Milanese involved two containers – primer and enamel – packaged together but bearing different warnings. The plaintiff sustained severe burns when, while using the primer, vapors were ignited and a flash fire erupted. The following warning appeared on the front of the primer can: **"DANGER: EXTREMELY FLAMMABLE. CONTENTS UNDER PRESSURE. VAPOR HARMFUL."** Milanese, 244 F.3d at 106. In contrast, the warning on the front of the enamel can stated: *"**DANGER! EXTREMELY FLAMMABLE LIQUID & VAPOR. VAPORS MAY CAUSE FLASH FIRE. CONTENTS UNDER PRESSURE.**"* Id. at 107. Milanese claimed that the primer can was misbranded under the FHSA "because the principal hazard associated with the product, namely that 'vapor may cause flash fire,' *nowhere* appeared on the product's

9

label."[4] Id. at 108 (emphasis added). The Second Circuit Court of Appeals ruled, "a material issue of fact as to whether the danger of flash fire caused by the vapor is a primary hazard that is separate and distinct from the flammability of the liquid product.... Assuming that flash fire from the Primer *vapor* is a hazard distinct from the flammability of the *liquid* product, we cannot hold that, as a matter of law, the Primer can fully complies with the FHSA." Id. at 112. Thus, the second major difference between Milanese and the instant case is that Milanese involved a complete failure to warn of a principal hazard. Unlike Milanese, the dispute in the instant case is not whether the Pro Finisher label warned that inhalation of the product's vapor was harmful but rather, whether the physical location of the warnings regarding vapor inhalation complied with the FHSA's mandates.[5] Consequently, the Court concludes that Milanese does not provide adequate support for Plaintiff's misbranding claim.

In addition, Plaintiff's misbranding argument hinges on her interpretation of the FHSA regulations as requiring that all cautionary material be included in the product's principal display panel.[6] (See e.g., Palmieri Aff. ¶ 18 ("... words such as Vapor Harmful

---

[4] The plaintiff in Milanese also stated an alternative claim of non-compliance based upon the packaging of the primer and enamel as one unit. Milanese, 244 F.3d at 113.

[5] Defendant does not dispute that vapor inhalation is a principal hazard of Pro Finisher. Instead, Defendant contends that the warnings about vapor inhalation were appropriately placed on the back of the product's container.

[6] "Principal display panel means the portion(s) of the surface of the immediate container, and of any container or wrapping, which bear(s) the labeling designed to be most prominently displayed, shown, presented, or examined under conditions of retail sale." 16 C.F.R. § 1500.121(a)(2)(iv).

10

must be displayed on the principal display panel so that the public may see them when they go into a retail establishment such as Home Depot, Inc."); id. ¶ 21 ("Notwithstanding that the[] words ["VAPOR HARMFUL"] may be on the back of the panel, the failure to set them forth [in the (front) principal display panel] is a material breach of the FHSA . . . .") The Court notes that Plaintiff has failed to provide any facts or case law in support of its interpretation and that the above stated arguments are merely conclusory.

Moreover, as Defendant correctly pointed out in its pleadings, "[t]he regulations pertaining to the term 'principal display panel' do not state that the entire warning pertaining to a principal hazard must be contained on the front of a product." (Gregory Aff. ¶ 16.) In fact, the regulations provide that, "*[i]f all of the required cautionary labeling does not appear on the principal display panel*, the statement to 'Read carefully other cautions on the - - - - - - panel', or its practical equivalent, must appear . . . ." 16 C.F.R. § 1500.121(c)(2)(iii). Accordingly, the Court finds that the Pro Finisher's label complies with the FHSA because its front panel directs users to consult the additional precautions located on the back of the container, and also because the statements on the back panel were sufficiently conspicuous and explicit under the FHSA to warn against regarding vapor inhalation. Therefore, because there is no genuine issue of material fact as to Defendant's compliance with the FHSA, Defendant's motion for summary judgment is GRANTED. See Moss v. Parks Corp., 985 F.2d 736, 742 (4th Cir. 1993) (finding that Defendant "adequately complied with the regulations found in 15 U.S.C. § 1261(p)(1) and 16 C.F.R. §

11

1500 *et seq.*" where plaintiff argued primarily that the product's statement of precautionary measures was insufficient); see also Landis, 96 F.Supp.2d at 416 ("Because, as the circumstances in this case make clear, flash fires are the primary danger associated with the lacquer thinner, the [challenged] warning, is sufficient to put consumers on notice of the 'principal hazards' associated with the product."); but cf. Mattis v. Carlon Elec. Prod., 295 F.3d 856 (8th Cir. 2002) (holding that label did not comply with FHSA where "[t]he label d[id] not make it clear that *inhalation* of the vapors is harmful [and] did not state handling instructions or specify any precautionary measures regarding inhalation of fumes from the cement other than to say, 'if inhaled, get fresh air.'")

## CONCLUSION

Because there is no genuine issue of material fact regarding the Pro Finisher's compliance with the FHSA's labeling requirements, this Court GRANTS Defendant's motion for summary judgment.

SO ORDERED.
Dated: August 24, 2005
Brooklyn, NY

s/SJ
_____
Senior U.S.D.J.

P-049